# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **In re:** | **CASE NO. 21- 50044** |
| **JOHNNY JULES LAVERGNE** | **CHAPTER 11** |
| **Debtor.** | **JUDGE JOHN W. KOLWE** |

## AMENDED MOTION TO DISMISS CHAPTER 11 CASE, OR ALTERNATIVELY, TO CONVERT CASE OR REMOVE DEBTOR-IN-POSSESSION

COMES NOW, Professional Rental Tools, LLC ("PRT") who files this *Amended Motion to Dismiss Chapter 11 Case, or Alternatively, to Convert Case or Remove Debtor-in-Possession* (this "Motion") and in support thereof does state as follows:

### INTRODUCTION

On January 28, 2021, faced with the inevitability of creditor PRT's execution of its Judgment, defined *infra*, via the seizure and sale of his personal assets – including his home – Johnny Jules Lavergne ("Debtor") improperly initiated this Chapter 11 case under Subchapter V of the United States Code (as amended, the "Bankruptcy Code") for the sole, bad-faith purpose of thwarting PRT's collection efforts. The Debtor filed his case less than two days after PRT served its first Garnishment Interrogatories, commencing collection on the Judgment.

The Debtor's efforts to use a bankruptcy filing as a mere delay tactic are not only transparent but inappropriate and fundamentally contrary to the purpose of Chapter 11 and the Bankruptcy Code. This bankruptcy proceeding reflects a two-party dispute that does not belong before this Court, and the timing of the Debtor's filing evidences a patent intent to frustrate PRT's legitimate efforts to enforce its rights.

The Debtor has no salary or wages, no ongoing business operations, and virtually no income. And, PRT asserts that its claim against the Debtor is nondischargeable due to the Debtor's fraudulent conduct in holding himself out as a mandatary of PRT despite lacking the authority from PRT to act on its behalf, self-dealing, and entering into leases on onerous terms with companies (in which he had personal interest) without authority from PRT – all to his personal benefit and the detriment of PRT.

This case could not achieve any legitimate objective under Chapter 11, and the Debtor has no prospect for reorganization. Accordingly, this case should be dismissed for "cause" or converted to a case under Chapter 7 pursuant to § 1112(b)(1) of the Bankruptcy Code, or alternatively the Debtor should be removed as debtor-in-possession pursuant to § 1185(a) of the Bankruptcy Code.

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I.      The Subchapter V Bankruptcy Case.

2.      On January 28, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Title 11, Chapter 11, Subchapter V of the Bankruptcy Code.  [Dkt. No. 1].

3.      The Debtor is acting as a debtor-in-possession pursuant to sections 1106 and 1107 of the Bankruptcy Code.

4.      On February 1, 2021, Armistead M. Long was appointed as the Subchapter V trustee pursuant to 11 U.S.C. § 1183(a). [Dkt. No. 16].

5.    The Debtor alleges in his Voluntary Petition for Individuals Filing for Bankruptcy that his debts are not primarily consumer debts. [Dkt. No. 1, § 16].

6.    The Debtor listed PRT as a creditor in its schedules. [Dkt. No. 1, Schedule E/F, § 4.19]. PRT disputes that its claim is unsecured. Pursuant to the recordation of the Judgment, PRT holds a judicial mortgage against the Debtor's property.

7.    On February 12, 2020, PRT filed its proof of claim in the amount of $954,002.79 arising out of the Judgment against the Debtor, attached hereto as **Exhibit A**. [Claim No. 9].

8.    Based on the Debtor's schedules, the Debtor is not earning a salary or any wages. The Debtor's only income is the result of other income "from rental property and from operating a business, profession, or farm" in the amount of $1,052.00. [Dkt. No. 1, Schedule I].

9.    The monthly expenses scheduled by the Debtor exceed his monthly income by at least $7,513.00 and include payments for three luxury vehicles, which alone total at least $1,498.00 - $446.00 dollars more than the Debtor's monthly income. *Id.*

10.    On February 24, 2021, the Debtor's Meeting of Creditors was held pursuant to 11 U.S.C. § 341 (the "**Meeting of Creditors**") at which time the Debtor appeared and testified that his bankruptcy filing was the result of PRT's Judgment.

11.    Furthermore, the testimony given during the Meeting of Creditors revealed extensive inaccuracies in the Debtor's schedules including that the Debtor failed to disclose his 2020 income, whatsoever, and failed to accurately disclose this interest in a TD Ameritrade account.

12.    At the time of the Meeting of Creditors, the Debtor testified that the TD Ameritrade account had a balance of approximately $200,000 and that the Debtor had made

transfers of tens of thousands of dollars out of that account in the days leading up to his bankruptcy filing.

## II.     The State Court Action.

13.     On November 27, 2019, PRT filed the *Petition for Damages* (the "Petition") commencing the lawsuit captioned *Professional Rental Tools, LLC v. Johnny J. Lavergne*, Case No. 20197461 in the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana (the "State Court Action"). A true and correct copy of the Petition is attached as **Exhibit 1** to the Declaration of Patrick Placer (the "Placer Declaration") hereto as **Exhibit B**.

14.     As alleged in the Petition, the Debtor and PRT entered into an Employment Agreement, dated April 10, 2015, whereby the Debtor began his employment with PRT. As part of his employment, the Debtor did not have authority to unilaterally execute leases on behalf of PRT or otherwise unilaterally bind PRT to lease obligations. A true and correct copy of the Employment Agreement is attached to the Placer Declaration as **Exhibit 2**.

15.     During the course of his employment, the Debtor executed a lease with Cross Bone Rental, LLC ("Cross Bone"), purportedly on behalf of PRT, whereby he attempted to bind PRT to a lease for a 2006 100-Ton Crawler Crane (the "Crane").

16.     The lease with Cross Bone obligated PRT to make monthly rental payments for the Crane of $15,000 for a period of 60-months. Both the rate and term of the lease were significantly in excess of reasonable commercial terms in light of the age, condition and corresponding fair market value of the Crane.

17.     After signing it, the Debtor provided a copy of the lease to PRT, at which time PRT informed the Debtor again that he did not have the authority to unilaterally enter into leases

on PRT's behalf. A true and correct copy of the Cross Bone lease is attached to the Placer Declaration as **Exhibit 3**.

18.     At that time, PRT questioned the lease and specifically asked the Debtor if he had a personal interest or ownership stake in Cross Bone, which he denied. Based on this knowledge, and after informing the Debtor that he could not unilaterally execute any leases on behalf of the entity, PRT affirmed the lease with Cross Bone.

19.     Effective December 27, 2018, the Debtor and PRT entered into a "Separation Agreement and Release," whereby both the Debtor and PRT agreed that his employment with PRT would be terminated for cause. A true and correct copy of the Separation Agreement and Release is attached to the Placer Declaration as **Exhibit 4**.

20.     After the Debtor's termination, PRT discovered that the Debtor did, in fact, have a personal interest and/or ownership stake in Cross Bone, contrary to his prior statement to PRT.

21.     Additionally, PRT discovered that it had been bound to a new lease with a new entity – Calco Enterprises, Inc. ("Calco") – relating to the Crane that was purportedly the subject of the lease with Cross Bone. PRT did not authorize the lease with Calco, nor did PRT authorize any payment toward that lease.

22.     PRT communicated its concerns about the Calco lease to Calco. Calco personnel informed PRT that they specifically purchased the Crane and other equipment from Cross Bone for the sole purpose of entering into a long-term lease with PRT. Both the sale of the equipment and the lease were facilitated and executed by the Debtor. Indeed, on June 8, 2018, the Debtor terminated the prior lease with Cross Bone and, again without authority and without PRT's knowledge, executed a new lease for the Crane with Calco (the "Calco Lease"). A true and correct copy of the Calco Lease is attached to the Placer Declaration as **Exhibit 5**.

23.     The Calco Lease obligated PRT to monthly rentals for a period of 84 months (7 years) at a rate of $22,600 per month for the Crane and three other pieces of equipment. Both the rate and the term of the Calco Lease were significantly in excess of reasonable commercial terms, particularly in light of the age, condition, and corresponding fair market value of the Crane.

24.     The Debtor caused PRT to make payments on the Calco Lease without the knowledge or consent of PRT's officers regarding the onerous terms of the Calco Lease.

25.     During the course of PRT's communications with Calco about the Calco Lease, PRT raised the validity of the lease. In response, Calco provided PRT with a copy of the Calco Lease executed by the Debtor and a copy of a "Corporate Resolution of Signing Authority" that Calco indicated the Debtor provided it. This purported resolution (dated January 1, 2018) allegedly gave the Debtor authority to execute contracts on behalf of PRT. A true and correct copy of the Corporate Resolution of Signing Authority is attached to the Placer Declaration as **Exhibit 6**.

26.     However, the "Corporate Resolution of Signing Authority" was invalid under Louisiana law (e.g., La. R.S. 12:1317) and, on information and belief, contains a forged signature of PRT's chief executive officer on a document that had neither been created by PRT nor used within the PRT organization at any point in time.

27.     As a result of the Debtor's actions, including, but not limited to, executing both the Cross Bone Lease and Calco Lease without authorization, hiding his personal interest in Cross Bone from PRT, hiding the existence of the Calco Lease from PRT officers and members, and presenting the "Corporate Resolution of Signing Authority" to Calco, PRT was forced to purchase the Crane and certain other equipment from Calco at commercially-unreasonable rates

to avoid the onerous terms of the Calco Lease that the Debtor unilaterally executed. A true and correct copy of the Equipment Purchase Agreement is attached to the Placer Declaration as **Exhibit 7.**

28.     In sum, while employed with PRT, the Debtor, without authority, entered into two separate leases with third-party entities. In both cases, the Debtor had an undisclosed personal interest in the company with whom he contracted on behalf of PRT. These leases bound PRT to onerous and non-market terms, which ultimately forced it to purchase the equipment that was subject to the lease in order to escape the terms of the second lease. The Debtor failed and/or refused to disclose the existence of one of the leases to PRT, or the fact that he would personally benefit from both leases. Accordingly, PRT commenced the State Court Action to recover those damages from the Debtor as a result of his conduct.

29.     On January 14, 2020, the Sheriff of Lafayette Parish served the Debtor with the Petition through domiciliary service on Cynthia Lavergne, at 201 Habitat Ridge Drive, Broussard, Louisiana 70518. A true and correct copy of the Citation is attached hereto as **Exhibit C**.

30.     The Debtor failed to timely file in the record an answer or response to the Petition in the State Court Action. Plaintiff therefore moved for a preliminary default judgment, which the state court signed on February 3, 2020. A true and correct copy of the Preliminary Default Judgment is attached hereto as **Exhibit D**.

31.     On September 25, 2020, the state court entered the final Judgment against the Debtor in favor of PRT. A true and correct copy of the Judgment is attached hereto as **Exhibit E**.

32.     The Judgment is recorded at File Number 2020-00035600 in the Lafayette Parish Mortgage Records. *See id.*

33.     All deadlines for appeal of the Judgment have expired.

34.     Pursuant to the Judgment, the Debtor is indebted to PRT in the amount of $935,029 plus legal interest from the date of Judgment until paid in full, and all court costs and expenses incurred by PRT in the State Court Action plus judicial interest from the date of Judgment until paid in full. *Id*.

35.     PRT asserts that its claim against the Debtor is nondischargeable due to the Debtor's fraudulent conduct in holding himself out as a mandatary of PRT despite lacking the authority from PRT to act on its behalf, self-dealing, and entering into leases on onerous terms with companies (one of which he had personal interest in) without authority from PRT – all to his personal benefit and the detriment of PRT.[1]

## III.    The Debtor's Motive and PRT's Post-Judgment Collection Efforts.

36.     On December 21, 2020, PRT filed the *Petition for Writ of Fieri Facias and Garnishment* requesting that the Sheriff of Lafayette Parish seize and sell the property of the Debtor to satisfy the payments due under the Judgment. A true and correct copy of the Petition for Writ of Fieri Facias and Garnishment is attached hereto as **Exhibit F**.

37.     On December 23, 2020, the state court entered the *Order and Notice of Seizure* ordering, among other things, that the property of the Debtor be seized and sold by the Lafayette Parish Sheriff to satisfy the amounts owed under the Judgment. The property of the Debtor subject to seizure and sale includes the properties owned by the Debtor with the municipal address 201 Habitat Ridge Dr., Broussard, Louisiana 70518-5291. A true and correct copy of the Order and Notice of Seizure is attached hereto as **Exhibit G**.

---

[1] PRT notes that an objection to dischargeability of its claim pursuant to 11 U.S.C. § 523 is forthcoming.

38.     The *Order and Notice of Seizure* further ordered that notice be given to the following garnishees and that any property, account, and/or asset of any description, whether tangible or intangible, held under the name of or owed to the Debtor were seized upon service of the Petition for Garnishment, Citation, and Interrogatories: JJ Lavergne, LLC; J & C Commercial Cleaning, LLC; United Subsea Specialists, LLC; REL Enterprises, Inc.; C&T Interventions LLC; Heaven 2 Hell Solutions, LLC; Home Bank, N.A.; First National Bank of Louisiana; Regions Bank; and IBERIABANK.

39.     On January 26, 2021, Garnishment Interrogatories were served on United Subsea Specialists, LLC; REL Enterprises, Inc.; C&T Interventions LLC; Heaven 2 Hell Solutions, LLC; and Home Bank, N.A. On January 28, 2021, Garnishment Interrogatories were served on JJ Lavergne, LLC and J & C Commercial Cleaning, LLC. True and correct copies of the Citations to the Garnishees and Notice of Seizure in Garnishment are attached hereto as **Exhibit H.**

40.     Faced with the PRT's inevitable collection of its Judgment, the Debtor filed the above-captioned bankruptcy proceeding and all attempts to seize and sell the Debtor's property were stayed.

## LAW AND ARGUMENT

**I.      Dismissal pursuant to 11 U.S.C. § 1112, Generally.**

41.     Pursuant to section 1112(b)(1) of the Bankruptcy Code, "the court *shall* convert a case under [Chapter 11] to a case under chapter 7 or dismiss a case under [Chapter 11]. whichever is in the best interest of creditors and the estate, *for cause* . . . ." 11 U.S.C. § 1112(b)(1)(emphasis added).

42.     The term "cause" is not defined in section 1112. However, section 1112(b)(4) states that cause for dismissal, at the very least, absolutely includes the following: "substantial or

continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

43.     Furthermore, the Bankruptcy Code provision that a Chapter 11 case may be dismissed 'for cause' has been interpreted to include the lack of good faith in its filing. *See Inv'rs Grp., LLC v. Pottorff,* 518 B.R. 380, 382 (N.D. Tex. 2014) (*citing In re Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986)); *see also In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 1686, 2005 WL 2148362, at *5 (Bankr. N.D. Tex. January 26, 2005) ("Lack of good  faith is not one of the enumerated examples in section 1112(b), but many courts have held that lack of good faith is appropriate cause for dismissal under that section.").

44.     As several courts have noted, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 limited the discretion of bankruptcy courts with respect to conversion or dismissal under section 1112.  *See, e.g., In re Gilroy*, No. BAP-NH-07-054, 2008 WL 4531982, at *4 (B.A.P. 1st Cir. Aug. 4, 2008) ("BAPCPA limited the bankruptcy court's discretion to dismiss or convert a chapter 11 petition for cause by mandating conversion or dismissal if the movant establishes cause.")(*citing* Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*, ¶ 1112.04[1] (15th ed. rev. 2008)); Pub. L. 109-8, § 442(a)(2005) (significantly revising subsection 1112(b), in particular, substituting the words "the court may" with "the court shall"). Following the Bankruptcy Technical Corrections Act of 2010, section 1112(b)(1) and (2) now collectively emphasize that if cause is shown, conversion or dismissal *must* be granted unless (1) the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interest of creditors and the estate, *or* (2) if the court finds and specifically identifies "unusual circumstances" establishing that converting or dismissing the case is not in the best interests of creditors and the estate, *and* the debtor establishes that three separate, mandatory

conditions carefully outlined in subsections 1112(b)(2)(A) and (B) are each satisfied. *See* 11

U.S.C. § 1112(b)(1) and (2); *In re Ashley Oaks Dev. Corp.*, 458 B.R. 280 (Bankr. D.S.C. 2011).[2]

45.     Notably, while section 1112(b)(1), speaks to the appointment of a trustee or

examiner under section 1104, section 1104, is not applicable to subchapter V. *See* 11 U.S.C. §

1181(a); *In re Online King LLC*, No. 20-42591, 2021 Bankr. LEXIS 198, at *14 n.11 (Bankr.

E.D.N.Y. Jan. 19, 2021).

46.     Regarding the second limitation on dismissal, "courts have concluded" that the

term "unusual circumstances" as used in section 1112, "contemplates conditions that are *not*

*common* in most Chapter 11 cases." *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011)

(emphasis added) (citations omitted).

47.     If "cause" for dismissal is established but "unusual circumstances" are found,

three mandatory conditions must still be satisfied before a debtor may avoid dismissal. Pursuant

to section 1112, the party objecting to dismissal must "establish[] that" there exists a "reasonable

justification for the act or omission" which qualifies as "cause" for dismissal.   11 U.S.C. §

1112(b)(2)(B). Section 1112 further provides that in order to avoid dismissal, a debtor must show

---

[2] As the *Ashley Oaks* court explained:

> Prior to the [2010] amendment, a court was not required to dismiss
> or convert a case even when the movant established cause if the
> court specifically identified unusual circumstances as to why
> dismissal or conversion was not in the best interest of the estate.
> After the amendment, the defense of unusual circumstances can
> only be invoked where the debtor or other party opposing the
> motion also establishes that: (1) there is a reasonable likelihood
> thata  plan will be confirmed within the timeframes expressed in §
> 1112(b)(2)(A), and (2) the grounds for conversion or dismissal
> include an act or omission other than the cause set for the in §
> 1112(b)(4)(A) for which there is a reasonable justification for the
> act or omission and such act or omission will be cured within a
> reasonable period of time fixed by the court.

*In re Ashley Oaks Dev. Corp.*, 458 B.R. st 284-85.

that "there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1112(e) and 1129(e) of this title or within a reasonable amount of time."

48.     The Code and relevant case law collectively provide that once the party moving for conversion or dismissal has established "cause" under section 1112(b), the burden shifts to the party opposing conversion or dismissal to show both "unusual circumstances" and the satisfaction of the three distinct mandatory conditions specified in section 1112(b)(2). *Ashley Oaks*, 458 B.R. at 284-87.

49.     Considering the authorities above, as further explained below, at this moment, in this case, "cause" for dismissal undeniably exists because of the Debtor's lack of good faith in filing the above-captioned bankruptcy case and ineligibility to proceed under Subchapter V. Furthermore, there can be no reasonable justification for these issues and no unusual circumstances exist which establish that dismissing the case is not in the best interests of creditors and the estate.  Accordingly, this case should be dismissed or converted pursuant to 11 U.S.C. § 1112.

## II.     Lack of Good Faith in Filing Constitutes Cause for Dismissal.

50.     "The Bankruptcy Code provision that a Chapter 11 case may be dismissed 'for cause' has been interpreted to include the lack of good faith in its filing." *In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991) (citing 11 U.S.C. § 1112(b); *In re Little Creek*, 779 F.2d at 1072.)

51.     "Good faith upon filing is an implied requirement. Courts consider the totality of the circumstances in determining whether there is cause for dismissal for lack of good faith. The aim of the good faith standard is to determine whether the real motivation for filing is to abuse the reorganization process and to cause hardship or to delay creditors by resorting to Chapter 11,

without an intent or ability to reorganize." *In re Marino*, Nos. 09-33545-H3-11, 09-33649-H3-11, 09-33650-H3-11, 2010 Bankr. LEXIS 401, at *6-7 (Bankr. S.D. Tex. Feb. 9, 2010) (*citing Little Creek Development*, 779 F.2d 1068 (5th Cir. 1986)).

52.     Particularly, courts have cited lack of good faith in dismissing cases where it was found that the case was filed purely to resolve what is really a two-party dispute. *Id.; see also In re S. Healthcare Sys.*, No. 02-11621, 2003 Bankr. LEXIS 2133, at *7 (Bankr. M.D. La. Jan. 6, 2003) (*citing In re SB Properties, Inc.*, 185 B.R. 206 (Bankr. E.D. Pa. 1981)).

53.     "Precedents suggest that bad faith dismissal is to be determined based on the totality of the circumstances." *Mirant Corp.*, 2005 Bankr. LEXIS 1686, at *24 (*citing In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999)). This requires the court's "evaluation of the debtor's financial condition, motives and the local financial realities." *Id.* (*citing Little Creek*, 779 F.2d at 1072). Courts have set out factors or patterns to be considered in the good faith analysis. *See e.g. Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident)*, 52 F.3d 127, 131 (6th Cir. 1995); *Little Creek*, 779 F.2d at 1073 ("The debtor has one asset . . . . The secured creditor's liens encumber this [asset]. There are generally no employees . . . , little or no cash flow, and no available sources of income. . . .").

**A.      This Case has All of the Indicia of a Bad Faith Filing.**

54.     The *Little Creek* court established that "determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on 11 U.S.C.S. §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns." *Little Creek*, 779 F.2d at 1073.

55.     "Several, but not all, of the following conditions usually exist":

a. The debtor has one asset, such as a tract of undeveloped or developed real property;

b. The secured creditors' liens encumber this tract;

c. There are generally no employees except for the principals;

d. There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C.S. §§ 361, 362(d)(1), 363(e), or 364(d)(1);

e. There are only a few, if any, unsecured creditors whose claims are relatively small;

f. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court; and

g. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; and

h. There are sometimes allegations of wrongdoing by the debtor or its principals.

*Id*.

56. Each of the above-enumerated factors, and others, are indicia that a debtor may have no valid reorganization purpose in filing bankruptcy but seeks only to shield property from the legitimate rights of creditors. [Dkt. No. 1, Schedule D, § 2.1].

57. The essential facts of this case establish that practically all of the indicia of bad faith filing are present.

58.     First, the Debtor's primary asset – the 201 Habitat Ridge Dr. property – is encumbered by the Debtor's secured creditor's lien as well as PRT's judicial mortgage.

59.     Second, the Debtor has not alleged any business operations or employees, which would otherwise benefit from Chapter 11 reorganization. At the Meeting of Creditors, the Debtor testified that he has no employees.

60.     Third, PRT is by far the Debtor's largest creditor, with a scheduled claim of $935,029.00. The Debtor's other scheduled claims are significantly lower than PRT's claim, with the Debtor's largest unsecured creditor owed a comparatively de minimis amount of only $95,700.00. [Dkt. No. 1, Schedule E/F, § 4.21].

61.     Additionally, at the Meeting of Creditors, the Debtor appeared and testified that his bankruptcy filing was the result of PRT's Judgment.

62.     Fourth, based on the Debtor's schedules, the Debtor has little or no cash flow, and no available sources of income currently to sustain a plan of reorganization or to make adequate protection payments.

63.     The Debtor is not earning a salary or any wages; instead, his only income is the result of other income "from rental property and from operating a business, profession, or farm" in the amount of $1,052.00. [Dkt. No. 1, Schedule I].

64.     Yet, the monthly expenses scheduled by the Debtor exceed his monthly income by at least $7,513.00 and include payments for three luxury vehicles, which alone total at least $1,498.00 - $446.00 dollars more than the Debtor's monthly income. The Debtor has offered no explanation as to how the prepetition budget deficit is funded each month.

65.     Moreover, the testimony given during the Meeting of Creditors revealed extensive inaccuracies in the Debtor's schedules including that the Debtor failed to disclose his 2020 income, whatsoever, and failed to accurately disclose this interest in a TD Ameritrade account.

66.     At the time of the Meeting of Creditors, the Debtor testified that the TD Ameritrade account had a balance of approximately $200,000 and that the Debtor had made transfers of tens of thousands of dollars out of that account in the days leading up to his bankruptcy filing. Based on the foregoing, PRT suspects that the Debtor uses this TD Ameritrade account as a personal piggybank but has failed to disclose the benefits he derives from this account to this Court.

67.     Fifth, as set forth *supra*, PRT alleges wrongdoing by the Debtor, Judgment was rendered against him in the State Court Action, and the timing of his filing clearly represents an attempt to frustrate or delay PRT's legitimate efforts to execute and collect on the Judgment. In fact, this bankruptcy proceeding was filed merely two days after PRT's initial Garnishment Interrogatories were served. And, at the Meeting of Creditors, the Debtor confirmed that the bankruptcy filing was a response to PRT's collection efforts, which consequently interfered with PRT's rights pursuant to the Judgment.

68.     Finally, the Debtor has no possibility of reorganization. Any reorganization essentially involves the resolution of a two-party dispute between the Debtor and PRT whereby the Debtor seeks to circumvent collection of the Judgment via abuse of the bankruptcy process.

69.     In short, the overwhelming weight of the factors courts consider to be indicative of a bad faith filing are present in the Debtor's case. These factors underscore the obvious: there is nothing to reorganize in this case. Instead, the sole, bad-faith purpose of the Debtor's filing to

interrupt PRT's collection of the Judgment. This delay tactic is not a valid purpose for filings a Chapter 11 proceeding.

70. Because the totality of the circumstances plainly favors a finding that this Chapter 11 proceeding was filed in bad faith and because the Debtor has no valid reorganizational purpose, the Court should dismiss the above-captioned proceeding or convert it to a case under Chapter 7.

**B.      Courts Routinely Dismiss Chapter 11 Cases where the Debtor did not File his Case in Good Faith.**

71. The *Schultz* court found that the debtor did not file his bankruptcy case in good faith where, among other things, "the petition was filed to avoid the collection efforts of a single creditor in what is essentially a two-party dispute." *In re Schultz*, 436 B.R. 170, 178 (Bankr. M.D. Fla. 2010). The *Schultz* movant was a creditor holding a judgment against the debtor in the amount of $250,000.00 who had filed a Judgment Lien Certificate with the Florida Secretary of State, had repossessed the debtor's vehicle and garnished his bank account within the months preceding the filing of the Chapter 11 petition. *Id.*

72. None of the entities listed as unsecured creditors were suing the *Shultz* debtor or attempting to seize any of his assets at the time that the bankruptcy petition was filed. *Id.* at 172. The debtor's listed unsecured claims were significantly lower than the movant's judgment. *Id.*

73. Additionally, the *Schultz* court found that a Chapter 11 case may be dismissed for lack of good faith filing where a debtor had "virtually no earnings" for several years before the petition was filed. *Id.* at 176 (*citing In re Lezdey*, 332 B.R. 217, 224 (Bankr. M.D. Fla. 2005)).

74. Accordingly, the circumstances of *Schultz* demonstrated that the debtor did not seek Chapter 11 relief with the intent or ability to reorganize his finances under the bankruptcy laws. *Id.* Rather, the *Schultz* movant had established "cause" for dismissal, and the court held

that the Chapter 11 case should be dismissed for "cause" pursuant to §1112(b)(1) of the Bankruptcy Code. *Id*.; *see also In re Ford*, No. 12-20094, 2013 Bankr. LEXIS 2317, at *18 (Bankr. D. Wyo. June 6, 2013) (finding the debtor lacked good faith in filing her bankruptcy petition where she filed for bankruptcy protection was to circumvent creditor's collection efforts on its state court judgment); *In re 801 S. Wells St. Ltd. Pshp*., 192 B.R. 718, 727 (Bankr. N.D. Ill. 1996) (bad-faith filings existed where timing of the filing revealed intent to prevent foreclosure); *In re McDuffie*, No. 04-53411, 2007 Bankr. LEXIS 4944, at *17 (Bankr. S.D. Miss. July 5, 2007) (debtor's transparent attempt to delay foreclosure of debtor's residence evidenced debtor's lack of good faith and supported dismissal); *In re Trident Associates Ltd. Partnership*, 52 F.3d 127, 131 (6th Cir.) (1995) (upholding bankruptcy court's decision to lift automatic stay and dismiss petition because petitioner filed in bad faith to isolate insolvent property and its creditors on the eve of foreclosure).

### C. The Debtor's Case should be Dismissed for Lack of Good Faith Filing.

75.     Similarly here, the Debtor's undeniable intent in filing the instant bankruptcy proceeding was to thwart the collection efforts of a single creditor – PRT – in what is essentially a two-party dispute. In fact, the Dedtor testified at the Meeting of Creditors that PRT's Judgment catalyzed his filing.

76.     By no coincidence, the Debtor's bankruptcy case was commenced merely two days after PRT's first Garnishment Interrogatories were served. Pursuant to the recordation of PRT's Judgment, PRT also has a judicial mortgage against the Debtor's immovable property, which includes the Debtor's largest asset, the 201 Habitat Ridge Dr. property.

77.     PRT is by far the Debtor's largest creditor, with a scheduled claim of $935,029.00. The Debtor's other scheduled claims are significantly lower than PRT's claim, with

the Debtor's largest unsecured claim owed to the SBA totaling only $95,700.00. [Dkt. No. 1, Schedule E/F, § 4.21].

78. Likewise, based on the Debtor's schedules, he has "virtually no earnings." The Debtor is not now and was not earning a salary or any wages at the time that he filed this Chapter 11 case. Instead, his only disclosed income is the result of other income "from rental property and from operating a business, profession, or farm" in the amount of $1,052.00. [Dkt. No. 1, Schedule I]. It is unclear to PRT what "income" the Debtor draws from his TD Ameritrade account, as his interests in that account have not been completely or accurately disclosed to the Court at this time.

79. Nevertheless, the monthly expenses scheduled by the Debtor exceed his scheduled monthly income by at least $7,513.00 and include car payments, which alone total at least $1,498.00. The Debtor has offered no explanation as to how the prepetition budget deficit was funded each month.

80. Accordingly, the instant circumstances demonstrate that the Debtor did not seek Chapter 11 relief with the intent or ability to reorganize his finances under the bankruptcy laws. Rather, this Chapter 11 case should be dismissed or converted for "cause" pursuant to §1112(b)(1) of the Bankruptcy Code.

**III.  The Debtor Lacks Any Reasonable Likelihood of Rehabilitation.**

81. Cause exists for dismissal of a Chapter 11 case where the evidence demonstrates there is both (1) a substantial or continuing loss to or diminution of the estate and (2) the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).

82. "For purposes of § 1112(b)(4)(A), "cause" can be shown by demonstrating that the debtor suffered or has continued to experience a negative cash flow or declining asset values

following the order for relief. *In re Delta AG Grp., LLC*, 596 B.R. 186, 195 (Bankr. W.D. La. 2019) (*citing In re Paterno*, 511 B.R. 62, 66 (Bankr.M.D.N.C.2014)).

83.     Cause further exists for dismissal of the Debtor's case because the Debtor has negative cash flow as alleged in his schedules and lacks any reasonable likelihood of rehabilitation. Despite assertions that the Debtor's new business venture will begin generating revenue in April or May 2021, the Debtor has yet to provide PRT or this Court with evidence of that allegation.

84.     As explained above, the Debtor has "virtually no earnings" and is not earning a salary or any wages at this time nor was he at the time that he filed this Chapter 11 case. Instead, the Debtor's only income is the result of other income "from rental property and from operating a business, profession, or farm" in the amount of $1,052.00. [Dkt. No. 1, Schedule I]. Yet, the monthly expenses scheduled by the Debtor exceed his monthly income by at least $7,513.00 and include car payments, which alone total at least $1,498.00. The Debtor has offered no explanation of this negative cash flow or to how this budget deficit is funded each month.

85.     PRT's Judgment is nondischargeable because the Debtor, fraudulently and without authority, bound PRT to leases with onerous and non-market terms, which ultimately forced PRT to purchase the equipment that was subject to the lease in order to escape the terms of the second lease. Therefore, PRT contends that its Judgment is nondischargeable under 11 U.S.C. § 523(a) for the Debtor's fraudulent conduct as described in detail in the Petition, which resulted in PRT's detriment.

86.     Because PRT's claim is nondischargeable, the Debtor lacks a reasonable likelihood of rehabilitation or ability to effectuate a plan of reorganization. For these reasons, this

bankruptcy proceeding should be dismissed or converted to a case under Chapter 7 for cause under 11 U.S.C. § 1112(b)(4)(A).

**IV.      The Debtor is Ineligible for Subchapter V Treatment.**

87.    "When a debtor's eligibility to file under a particular chapter of the Bankruptcy Code is challenged, the burden is upon the debtor to establish such eligibility." *In re Blanchard*, No. 19-12440, 2020 Bankr. LEXIS 1909, at *4 (Bankr. E.D. La. July 16, 2020) (*quoting In re Wright*, No. 20-1035, 2020 Bankr. LEXIS 1240, 2020 WL 2193240, at * 2 (Bankr. D.S.C. Apr. 27, 2020)).

88.    Section 1182 of the Bankruptcy Code defines a subchapter V "debtor" as:

> a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor…

11 U.S.C. § 1182(1)(a).

89.    PRT asserts that the Debtor does not meet the 11 U.S.C. § 1182 definition of a subchapter V "Debtor," which requires that a debtor be "engaged in commercial or business activities." As explained *supra*, the Debtor's only income is "other income" of unknown source.

90.    Furthermore, PRT disputes that "not less than 50 percent of [the Debtor's debts] arose from the commercial or business activities of the debtor." PRT's claim constitutes the majority of PRT's debt – the collection of which triggered this bankruptcy filing. PRT's Judgment did not arise out of the "commercial or business activities of the debtor" but rather his bad acts and conduct in his individual capacity.

91.     The Debtor, without authority, entered into two, separate leases with third-party entities. In both cases, the Debtor had an undisclosed personal interest in the company with whom he contracted on behalf of PRT. These leases bound PRT to onerous and non-market terms, which ultimately forced it to purchase the equipment that was subject to the lease in order to escape the terms of the second lease. The Debtor failed and/or refused to disclose the existence of one of the leases to PRT, or the fact that he would personally benefit from both leases. Accordingly, PRT commenced the State Court Action to recover those damages from the Debtor as a result of his conduct.

92.     The Judgment arises out of, among other things, the Debtor's personal liability to PRT pursuant to Louisiana Civil Code Article 3008, which states: "If the mandatary exceeds his authority, he is answerable to the principal for resulting loss that the principal sustains."

93.     Thus, the Debtor's largest debt owed to PRT is not a business or commercial debt but a Judgment rendered against the Debtor in his personal capacity for bad acts committed by him as an individual.

94.     The Debtor has abused the bankruptcy process by filing a Subchapter V case for which he is not eligible. Therefore, this Chapter 11 case should be dismissed or converted.

**V.     There are No Unusual Circumstances Establishing that Dismissing the Case is Not in the Best Interests of Creditors and the Estate.**

95.     There are no unusual circumstances that would excuse these failures by the Debtor.  This is a simple Chapter 11 case, and there is nothing unusual about it that would excuse the failure to comply with the requirements of the Bankruptcy Code. Even if there were unusual circumstances to justify the failure to comply, the Debtor cannot provide any reasonable justification for its lack of good faith in filing and noncompliance with the Bankruptcy Code. In

the absence of unusual circumstances and reasonable justification, the Court, under section 1112, must dismiss this case.

**VI.    Alternatively, the Debtor Should be Removed as Debtor-in-Possession Pursuant to 11 U.S.C. § 1185(a).**

96.    Section 1185(a) of the Bankruptcy Code provides that:

> On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter.

11 U.S.C. § 1185(a).

97.    "Unlike in a standard Chapter 11 case—where 11 U.S.C. § 1104(a) provides that a Chapter 11 trustee may only be appointed for 'cause' or 'if such appointment is in the interests of creditors, equity security holders, and other interests in the estate'—appointment of a trustee is automatic in a case under Subchapter V. While a Subchapter V trustee does not necessarily perform the duties of a Chapter 11 trustee, where cause would exist to appoint a Chapter 11 trustee in a standard Chapter 11 case, Subchapter V affords parties-in-interest comparable remedies, including removal of the debtor-in-possession and expansion of the Subchapter V trustee's duties. See 11 U.S.C. §§ 1185(a) and 1183(b)." *In re Peak Serum, Inc.*, 623 B.R. 609, 614 n.1 (Bankr. D. Colo. 2020).

98.    Here, cause exists for removal of the Debtor as debtor-in-possession because the Debtor has exhibited dishonesty, incompetence, and gross mismanagement both before and after the date of commencement of this bankruptcy case for the reasons briefed herein.

99.    Specifically, the testimony given during the Meeting of Creditors revealed extensive inaccuracies in the Debtor's schedules including that the Debtor failed to disclose his

2020 income, whatsoever, failed to accurately disclose this interest in the TD Ameritrade account, and failed to initially disclose ownership of a Cadillac.

100.     Moreover, as admitted during the Meeting of Creditors, the Debtor made inappropriate transfers out of the TD Ameritrade Account in the amount of $51,000 in the days leading up to his bankruptcy filing. More egregiously, the Debtor transferred $60,000 out of his TD Ameritrade account after this case was commenced.

101.     These improper transfers demonstrate the Debtors' disregard for the Bankruptcy Code, incompetence, and gross mismanagement as debtor-in-possession.

102.     To date, the Debtor has not amended his Schedules to include his 2020 income, and PRT questions the level of honestly with which the Schedules were completed and the Debtor's ability to continue to run a truthful bankruptcy process.

103.     For the reasons explained throughout this motion, PRT requests that the Debtor be removed as debtor in possession for cause pursuant to 11 U.S.C. § 1185.

## CONCLUSION

WHEREFORE, for the reasons enumerated herein, Professional Rental Tools, LLC requests that its Motion be granted and that (1) the above-captioned Chapter 11 Case be converted to one under Chapter 7, (2) that Johnny Jules Lavergne be removed as debtor in possession for cause pursuant to 11 U.S.C. § 1185, or (3) that the case be dismissed. PRT believes that this Court's removal of Johnny Jules Lavergne as debtor in possession for cause pursuant to 11 U.S.C. § 1185 or conversion of this proceeding to one under Chapter 7 will result in the most benefit to the estate and its creditors. Professional Rental Tools, LLC further prays for all other relief to which it is entitled in equity and law.

Respectfully submitted,


/s/ Madison M. Tucker
MICHAEL C. DREW (La. Bar #30884)
MARK A. MINTZ (La. Bar #31878)
MADISON M. TUCKER (La. Bar #37722)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8261
Facsimile: (504) 589-8261
mdrew@joneswalker.com
mmintz@joneswalker.com
mtucker@joneswalker.com

-and-

JUSTIN J. MAROCCO (La. Bar #35226)
Jones Walker LLP
445 North Blvd., Suite 800
Baton Rouge, Louisiana 70802
Telephone: (225) 248-2415
Facsimile: (225) 248-2010
jmarocco@joneswalker.com

*Attorneys for Professional Rental Tools, LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing pleading was filed and caused to be served on counsel by electronic filing through the Court's CM/ECF system on March 15, 2021. A Notice of Electronic Filing will be sent by the Court to all counsel of record who have consented to email notification and electronic service, including those listed below:

Thomas E. St. Germain
Weinstein & St. Germain, LLC
1103 West University
Lafayette, LA 70506
ecf@weinlaw.com
*Counsel for Debtor*

Office of U. S. Trustee
300 Fannin, Suite 3196
Shreveport, LA 71101
Gail.mcculloch@usdoj.gov
*Counsel for the US Trustee*

Armistead Mason Long
400 E. Kaliste Saloom Road
Suite 4200
Lafayette, LA 70508
along@gamb.com
*Subchapter V Trustee*

Ashley E. Morris
DEAN MORRIS, L.L.C.
1505 North 19th Street
Monroe, LA 71201
(318) 388-1440
*Counsel for Pingora Loan Servicing, LLC, as Serviced By Cenlar, FSB*

  */s/ Madison M. Tucker*
Madison M. Tucker